Katharine B. Miller,
8302 Gladstone Street
Juneau, AK 99801
(907) 419-7804
Dio36dio@gmail.com
*Plaintiff (Pro Se)*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATHARINE B. MILLER,<br>8302 Gladstone Street,<br>Juneau, AK 99801,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>U.S. FOREST SERVICE,<br>Sidney R. Yates Federal Building,<br>2014 14th Street SW,<br>Washington, DC 20227,<br><br>　　　　&<br><br>FRANCIS SHERMAN, Forest Supervisor<br>Tongass National Forest<br>648 Mission Street, Suite 110,<br>Ketchikan, AK 99901-6591,<br><br>　　　　　　Defendants. | No. <u>1:24-CV-00013-SLG</u><br><br>1:24<br><br><br>**PLAINTIFF'S BRIEF<br>REGARDING REMEDY** |

Case 1:24-cv-00013-SLG

# TABLE OF CONTENTS

**INTRODUCTION** ..........................................................................................................................1
**ARGUMENT**................................................................................................................................1
   I.   Vacatur is the presumptive and appropriate remedy in this case.............................1
   II.   The Forest Service's Violation is Serious...................................................................2
   III.   The disruptive consequences of vacatur do not outweigh the seriousness of the Forest Service's errors...........................................................................................................9
**CONCLUSION** ..........................................................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Allied-Signal v. Nuclear Reg. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993)........................................3
*Animal Def. Council v. Hodel*, 840 F.2d 1432 (9th Cir. 1988) .....................................................7
*California v. Bernhardt*, 472 F. Supp. 3d 573 ..............................................................................6
*Citizens for a Better Henderson v. Hodel*, 768 F.2d 1051 (9th Cir. 1985) ...................................4
Cook Inletkeeper v. Raimondo, 541 F.Supp.3d 987 (D. Alaska 2021)...........................................7
*Ctr. for Biological Diversity v. United States BLM*, 675 F. Supp. 3d 1112 ..................................9
*Ctr. for Food Safety v. Vilsack*, 734 F.Supp.2d 948 (N.D.Cal.2010) ...........................................3
*Davis v. Mineta*, 302 F.3d 1104......................................................................................................6
*Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016 (10th Cir. 2023)................3
*Humane Soc'y v. Locke*, 626 F.3d 1040 (9th Cir.2010).................................................................3
*Miller v. United States Forest Serv.*, 2025 U.S. Dist. LEXIS 192612............................................4
*Nat'l Parks and Conservation Ass'n v. Babbitt*, 241 f3.D 722 n18 (9th Cir. 2001).......................8
*Nat'l Parks Conservation Ass'n v. Semonite*, 916 F.3d 1075 (D.C. Cir. 2019).............................3
*NRDC v. United States Forest Serv.*, 421 F.3d 797 .......................................................................7
*Oglala Sioux Tribe v. U.S. Nuclear Regulatory Commission*, 896 F.3d 520 (D.C. Cir. 2018).......8
*Orutsararmuit Native Council v. United States Army Corps of Eng'rs*, 2025 U.S. Dist. LEXIS ....8
*Public Emples. for Envtl. Responsibility v. United States Fish & Wildlife Serv.* ..................... 12
*Rocky Mountain Wild v. Dallas*, 636 F. Supp. 3d 1289 (D. Colo. 2022) ......................................3
*Se. Alaska Conserv. Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638 (9th Cir.2007) ............2
*Seven Cnty. Infrastructure Coal.*, 145 S. Ct. ..................................................................................5
*Southeast Alaska Conservation Council v. United States Forest Serv.*, 468 F. Supp. 3d 1148 ....12

## Regulations

36 C.F.R. § 294.1(a) .......................................................................................................................5
40 C.F.R. §1502.2 Purpose.............................................................................................................6
5 U.S.C. § 706(2)(A) ......................................................................................................................2

i

# INTRODUCTION

Plaintiff respectfully requests that this Court set aside the Record of Decision (ROD) adopting the selected alternative from the Mendenhall Glacier Recreation Area (MGRA) Improvement Project EIS, and vacate the EIS. The Court's September 30, 2025 ruling determined that "the Purpose and Need Statement in the 2023 FEIS was unreasonably narrow, in so far as it identified a need to fully accommodate at the MGRA the expected projected growth of tourism in Juneau through 2050. As a result, the range of alternatives evaluated in the 2023 FEIS, each of which assumes an annual 2% growth rate of visitors to the MGRA, violates NEPA." [1]. The Forest Service's flawed decision to base the EIS on the need for the MGRA to fully accommodate the expected projected growth of tourism in Juneau through 2050 was made at the beginning of the EIS process and was incorporated into every aspect of the agency's analysis and ultimate decision that followed. These serious legal errors permeate the EIS and go well beyond mere technical or procedural formalities that can be easily cured on remand. Vacatur is the presumptive remedy and is appropriate in this case for the reasons explained below.

# ARGUMENT

## I. **<u>Vacatur is the presumptive and appropriate remedy in this case</u>**

Vacatur is the default remedy for violations under the Administrative Procedure Act (5 U.S.C. § 706(2)(A). *See, e.g.,* ("Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action. In other words, a court should vacate the agency's action and

---

[1] Docket 37 at 33

remand to the agency to act in compliance with its statutory obligations." (internal quotation marks and citation omitted)). Courts deviate from vacatur only in very limited circumstances. In the Ninth Circuit, remand without vacatur has been used only in rare circumstances where it is necessary to keep an agency action in force until it can be revised or replaced (*Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n. 7 (9th Cir. 2010) or when there are equity concerns, "namely serious irreparable environmental injury." (*Ctr. for Food Safety v. Vilsack*, 734 F.Supp.2d 948, 951 (N.D. Cal. 2010)) that would occur on remand. Defendants, who have the heavy burden to establish that the Court should default from the default, presumptive remedy identified by the APA, must demonstrate the existence of extraordinary circumstances to prove that vacatur is unnecessary.[2]

To determine whether it should vacate an agency's decision, a court must look at two factors: (1) 'the seriousness of the [agency action's] deficiencies (and thus the extent of doubt whether the agency chose correctly),' and (2) 'the disruptive consequences of an interim change that may itself be changed.' *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1049 (10th Cir. 2023) (quoting *Allied-Signal v. Nuclear Reg. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)).

## II. The Forest Service's violation is serious

In the present case, the Court found that the Forest Service violated fundamental requirements of NEPA by setting an improperly narrow need for the project that foreclosed

---

[2] *Rocky Mountain Wild v. Dallas, 636 F. Supp. 3d 1289, 1307 (D. Colo. 2022) (citing Nat'l Parks Conservation Ass'n v. Semonite, 916 F.3d 1075, 1082 (D.C. Cir. 2019))* ("[T]he party seeking to avoid vacatur of agency action bears the burden of showing entitlement to such extraordinary relief by presenting extraordinary facts that would support an exception.").

consideration of a reasonable range of alternatives.[3] The Purpose and Need section of an EIS identifies and explains to the public why an agency action is necessary and "the purpose and need to which the agency is responding." 40 C.F.R 1502. It forms the basis for identifying and evaluating the range of reasonable alternatives. The alternatives section is "the heart" of the EIS (40 C.F.R. § 1502.14). As the Ninth Circuit has held, "[t]he existence of a viable but unexamined alternative renders an environmental impact statement inadequate." *Citizens for a Better Henderson v. Hodel*, 768 F.2d 1051, 1057 (9th Cir. 1985). In the present case, the Court held that "[t]he 2023 FEIS Purpose and Need Statement includes the need to accommodate an anticipated 2% annual growth rate with a projected 1 million visitors per year by 2050. Because the Forest Service incorporates this growth into its Purpose and Need Statement, all of the action alternatives are estimated based on a 2% annual projected growth rate.... The Court finds that this renders the Purpose and Need Statement unreasonable because it unreasonably narrows the agency's consideration of alternatives and results in a visitor capacity that it preordained." [4]

"When an agency bypasses a fundamental procedural step, the vacatur inquiry asks not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision to skip that procedural step." *Standing Rock v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021). The inquiry here is whether the Forest Service could once again—on remand—justify narrowing the purpose and need and thereby constrain consideration of alternatives to only those that maximize commercial visitor levels through

---

[3] Docket 37 at 33 (The Purpose and Need Statement in the 2023 FEIS was unreasonably narrow, in so far as it identified a need to fully accommodate at the MGRA the expected projected growth of tourism in Juneau through 2050. As a result, the range of alternatives evaluated in the 2023 FEIS, each of which assumes an annual 2% growth rate of visitors to the MGRA, violates NEPA.)

[4] Docket 37 at 21

Case 1:24-cv-00013-SLG  3

further explanation. The Court's decision suggests that the Forest Service cannot lawfully achieve that objective. The Court rejected Defendants' argument that implicit in the designation of the MGRA as a recreation area is the directive to enable all people who want to come to the MGRA regardless of whether they arrive individually or on commercial special use permits[5]. The Court also rejected the government's argument that the purpose and need was not biased because 2% annual growth rate and anticipated 1 million visitors per year by 2050 were not included in the purpose and need.[6] Finally, the Court rejected Defendants' assertion that the growth rate used in the EIS was not a policy decision by the Forest Service.[7] The Forest Service has no remaining arguments to justify a purpose and need statement that artificially constrains the alternatives analysis except deference, and even here an overly simplistic "deference" argument must be rejected. The broadest application of deference still requires that an agency decision fall within a broad range of reasonableness[8] and the Court has found that the Defendants unreasonably narrowed the purpose and need, which strongly indicates any comparable narrowing on remand would be similarly unlawful and violate NEPA in the same core ways as the original decision.[9]

---

[5] Docket 37 at 31 (The Court does not agree with the Forest Service that a directive to manage the MGRA for "recreation" is necessarily a directive to enable as many visitors as possible to come to the MGRA)

[6] Docket 37 at 28 (The Court rejects the Forest Service's contention that the "2% annual growth rate and anticipated 1 million visitors per year by 2050 are [not] part of the purpose and need.)

[7] Docket 37 at 29 (Clearly, and despite the Forest Service's contentions to the contrary, the estimated 2% growth rate and 1 million visitors by 2050 is necessarily a policy choice because it is based on a deteermination that all projected visitors to Juneau should have the opportunity to visit the MGRA)

[8] *Seven Cnty. Infrastructure Coal.*, 145 S. Ct. at 1513 "Courts should afford substantial deference and should not micromanage those agency choices so long as they fall within a broad zone of reasonableness."

[9] Docket 37 at 21 (Because the Forest Service incorporates this growth into its Purpose and Need Statement, all of the action alternatives are estimated based on a 2% annual projected growth rate in the Visitor Center Unit. The Court finds that this renders the Purpose and Need Statement

Case 1:24-cv-00013-SLG                                                                            4

36 C.F.R. § 294.1(a) classifies the MGRA as a special area that "should be managed principally for recreation use substantially in [its] natural condition." In its decision, the Court stated, "fulfilling a directive to manage the MGRA "principally for recreational use substantially in [its] natural condition" might also include for example an alternative that restricted the number of visitors to the MGRA in order to enhance the visitor experience." [10] The requirement to extend consideration to such an alternative ensures that it would be impossible on remand for the Forest Service to justify its error (through further explanation or otherwise) to limit the purpose and need to maximize commercial visitor growth and meet the needs of the visitor industry

Set within this statutory and historical context, the Forest Service's NEPA violation could not be more serious. The Forest Service's unlawful narrowing of the Purpose and Need and, as a result, failing to consider a reasonable range of alternatives, undermine two fundamental objectives of NEPA: to "provide full and fair discussion of environmental impacts" resulting from Federal actions, and to inform "the public of the reasonable alternatives which would avoid and minimize adverse impacts or enhance the quality of the human environment" (40 C.F.R. §1502.2 **Purpose**). Before the EIS was initiated, the Forest Service made a policy choice "that all projected visitors to Juneau should have the opportunity to visit the MGRA, which can only occur as a consequence of increased special use permit allocations to commercial operators."[11]. The decision to base the EIS on the need to fully accommodate at the MGRA the expected projected growth of tourism in Juneau through 2050 was made at the earliest stage of the EIS process and was incorporated into every analysis that the agency undertook going forward from

---

unreasonable because it unreasonably narrows the agency's consideration of alternatives and results in a visitor capacity that is "preordained.")
[10] Docket 37 at 32
[11] Docket 37 at 30

the facility and trail capacity determinations, to the selection of the alternatives, to the analysis of those alternatives, to the responses provided to public comments, and ultimately to the final decision made by the agency. Federal courts have consistently held that these types of actions are serious and intolerable. *See California v. Bernhardt*, 472 F. Supp. 3d 573, 632 [12]; *Davis v. Mineta*, 302 F.3d 1104, 1119.[13]

The Forest Service's actions are also serious for their impact on subverting the public process. Nearly 20% of the 556 comments on the EIS directly questioned why increased visitation was the only option considered in the EIS or why a permit system limiting access could not be implemented (FS_17180-17440). The Forest Service pointed to the invalid purpose and need for the project and the Forest Service's mission in rejecting these alternatives.[14] The dismissal of these comments based on inaccurate and misleading information subverted NEPA's core purpose of providing decision-makers and the public with accurate information for evaluating the alternatives in the EIS. In light of the Forest Service's improper narrowing of the

---

[12] *California v. Bernhardt*, 472 F. Supp. 3d 573, 63 ([I]n its zeal, BLM simply engineered a process to ensure a preordained conclusion. Neither the APA, NEPA, nor *Chevron* tolerate such fickle actions. Where a court has found such widespread violations, the court must fulfill its duties in striking the defectively promulgated rule)

[13] *Davis v. Mineta, 302 F.3d 1104, 1119* (the 'purpose' of a project is a slippery concept, susceptible of no hard-and-fast definitions. One obvious way for an agency to slip past the structures of NEPA is to contrive a purpose so slender as to define competing 'reasonable alternatives' out of consideration (and even out of existence). The federal courts cannot condone an agency's frustration of Congressional will.)

[14] FS_017086-FS_017549: "Limiting the number of people allowed to visit the MGRA at one time would essentially limit the number of people that may visit the MGRA at all since many arrive on cruise ships that stay for only one day. Limiting access to the MGRA would not meet the purpose and need for the project" Comment numbers: 32-2, 16-2, 57-1, 67-2, 74-1, 106-2, 112-3, 114-2, 116-3, 123-1, 140-1, 133-2, 153-4, *154-1*, 155-1, *156-1*, *167-2*, 167-4, 168-1, 188-1 *190-1*, *193-1*, *194-1*, 196-1, 205-1, *208-1*, 210-1, *213-1*, 218-1, *224-1*, *228-1*, 234-1, 235-1, 236-1, 239-2, 241-2, *247-1*, *248-2*, *249-1*, *251-1*, 254-5, 270-1, 278-2, 278-7, 281-1, 283-1, *284-1*, 288-1, 291-6, 292-7, *292-15*, *294-2*, *301-3*, 302-22, *305-1*, 308-2, *310-1*, *316-1*, 318-10, 321-1, *324-1*, 326-2, *336-1*, 339-11, 340-1, *340-6*, 341-1, 342-6, *366-1*, *369-3*, 372-1, 375-1, *381-1*, 388-1, *391-*, 395-3, *400-1*, *416-1*, 431-1, 432-1, *442-1*, *448-1*, 451-1, *452-6*, *454-1*, *459-1*, *463-1*, *464-1*, 483-3, 483-4, *487-1*, *488-1*, *492-1*, *506-1*, 509-1 510-1, 516-1, 517-1, 517-4, 517-8, 525-1, *541-1*, *548-1*

Case 1:24-cv-00013-SLG 6

purpose and need, these comments should have been given more weight as reasonable alternatives to the proposed action, and this strongly suggest that the Forest Service would be unable to reach the same decision on remand. *NRDC v. United States Forest Serv.*, 421 F.3d 797, 812 (9th Cir. 2005) (finding that "had the decision makers and public known of the accurate demand forecast for Tongass timber, and the concomitant lower employment and earnings potential, the Forest Service may have selected an alternative with less adverse environmental impact, in less environmentally-sensitive areas') ; Where the information in the an EIS was so misleading, revision of an EIS is necessary to provide a reasonable, good faith, and objective presentation of the subjects required by NEPA. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1439 (9th Cir. 1988).

The Forest Service's errors in this case are distinguishable from errors at issue in *Cook Inletkeeper v. Raimondo*, 541 F. Supp. 3d 987 (D. Alaska 2021), where the Court found that NMFS' errors, while serious and pervasive, "pertained to only a limited set of activities authorized in the ITR." They are also distinguishable from the errors in *Orutsararmuit Native Council v. United States Army Corps of Eng'rs*, 2025 U.S. Dist. LEXIS 110107, *9-10 where "the FEIS failed to adequately consider one aspect of a complex mining project" and the issue on remand was "narrow and a matter of degree." In this case, the Forest Service's decision to predicate the EIS on the need to fully accommodate at the MGRA the expected projected growth of tourism in Juneau through 2050 was made at the beginning of the EIS process and was incorporated into every decision and analysis that the agency undertook from that point forward. These serious errors permeate every aspect of the EIS and go well beyond mere technical or

procedural formalities that can be easily cured merely by some additional explanation from agency. This weighs strongly in favor of vacatur.[15]

NEPA is a purely procedural statute that "does not mandate particular results but simply prescribes the **necessary** process" for an agency's environmental review of a project. *Seven Cnty. Infrastructure Coal.*, 145 S. Ct. at 1513 "The requisite harm is failure to follow the appropriate procedures." *Nat'l Parks Conservation Ass'n v. Babbitt*, 241 F.3d 722 n.18 (9th Cir. 2001) Remanding the serious errors in this case without vacatur and letting an action proceed despite these major violations of integral NEPA mandates negates the purpose of NEPA[16]. To bring the EIS and ROD into compliance with NEPA, the Forest Service would have to completely and objectively rewrite and reanalyze the project under a new purpose and need that would necessarily require a thorough analysis of new alternatives. An objective reanalysis cannot be accomplished within the framework of the biased original, let alone while the action is being unlawfully implemented.

For these reasons, Plaintiff submits that the seriousness of the Forest Service's errors and the systemic biases in the EIS counsel strongly in favor of vacatur of the EIS and ROD as the appropriate remedy.

---

[15] *Ctr. for Biological Diversity v. United States BLM*, 141 F.4th 976, 1028-1029 (finding that vacatur was warranted where BLM's decision to rely on a full field development standard lacking "any basis in law....at the outset of its supplemental analysis infected each determination that the agency subsequently made.").

[16] *Oglala Sioux Tribe v. U.S. Nuclear Regulatory Commission*, 896 F.3d 520 (D.C. Cir. 2018) ("If even "significant" deficiencies in NEPA reviews are forgiven because they are merely procedural, there will be nothing left to the protections that Congress intended the Act to provide").

Case 1:24-cv-00013-SLG 8

## III. The disruptive consequences of vacatur do not outweigh the seriousness of the Forest Service's errors

The Ninth Circuit has found remand without vacatur to be permissible only in rare circumstances, "namely serious irreparable environmental injury." *Ctr. for Biological Diversity v. United States BLM*, 675 F. Supp. 3d 1112, 1115 (D. Idaho) that would result on remand. In this case, vacatur will *prevent* the environmental harm that will result from large-scale development and construction at the MGRA designed to accommodate 1 million visitors by 2050. These substantial impacts are discussed in Plaintiff's complaint, opening brief and response brief and will not be reiterated here.

The Forest Service may argue that vacatur would prevent the agency from addressing existing overcrowding at the MGRA. Defendants argued in their response brief that "existing infrastructure at the MGRA is inadequate for the current commercial visitation levels" and that "many permittees ran out of permitted service days early in the summer" of 2023.[17] However, the Court should find these arguments unconvincing. As presented in Plaintiff's opening brief, and acknowledged in the Court's opinion, the Forest Service increased commercial visitor allocation in 2015 and again in 2019 through the issuance of Special Use Permits. Not only is the present level of overcrowding a direct consequence of these actions, but because the majority of visitors are arriving under special use permits that the Forest Service issues, the Forest Service has direct control over how many people to let in and could reduce the number of visitors at any time. Current crowding conditions, or operations at the MGRA in general, would be unaffected by vacatur and additional crowding in the absence of the EIS should be minimal according to the No Action alternative since no additional commercial special use permits could be issued.

---

[17] Docket 22 at 4

Case 1:24-cv-00013-SLG 9

Vacatur would merely maintain the status quo, leaving the Forest Service with significant discretion to determine how many special use permits to allow to address overcrowding.

Since the selected Alternative increases visitor capacity by 87% over 30 years[18], it is obvious that the EIS was never a response to crowding but rather to the opportunity to increase commercial visitors, and by association revenue, as cruise tourism in Juneau increases. However, the City and Borough of Juneau signed voluntary, nonbinding agreements with Cruise Lines International Association to cap ship traffic starting in 2025. A five-ship daily limit is already in effect, and starting in 2026, there will be a daily cap of 16,000 cruise passengers, with a 12,000 limit on Saturdays.[19] A new cruise port has been proposed by Goldbelt Corporation but the potential development is in the early stages and years away from completion.[20] Since the growth rate anticipated in the EIS is unlikely to occur in the near future, vacatur of the EIS and ROD would be minimally disruptive, if at all.

Construction on the MGRA project has not begun. Therefore, there is no argument for remand without vacatur based on disruption to activities underway.[21] At most the Forest Service may have completed plans for construction at a future date, but the "disruption to the agency's plans that will result from vacatur of the FEIS is outweighed by the benefit of ensuring that a legal and adequate FEIS and ROD are in place" before irreversible impacts to the MGRA occur.

---

[18] Docket 22 at 11

[19] Juneau Empire, "2025 Juneau cruise season comes to a close." https://www.juneauempire.com/news/2025-juneau-cruise-season-comes-to-a-close/

[20] Juneau Empire "Assembly approces on step in Douglas cruise port plan, but pauses next move." https://www.juneauempire.com/news/assembly-approves-one-step-in-douglas-cruise-port-plan-but-pauses-next-move/

[21] *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1245-1246 (quoting *Cf. Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97, 351 U.S. App. D.C. 214 (D.C. Cir. 2002) and finding that "[n]o disruption can come to a process that has either not started or has barely begun.)

*League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Peña*, 2015 U.S. Dist. LEXIS 46279, *14.

The Court should also consider the changes in the federal landscape that have occurred since the ROD was signed, which call into question whether the project could proceed even if the Defendants had prevailed in court. Most of the Forest Service staff at the MGRA were terminated in 2025, requiring the Forest Service to reassign staff from other offices and departments to cover the 2025 tourism season at the MGRA.[22] A planned reorganization of the Forest Service in 2026 would result in a reduced Alaska Regional Office in Juneau,[23] and the proposed FY 26 budget for the Forest service calls for significant cuts to salaries and expenses.[24] These factors strongly suggest that the Forest Service lacks the resources to implement the EIS and ROD or make the changes that would be required in a timely manner on remand.

Finally, several of the funding sources that the Forest Service listed in its response to commenters' requests for funding information[25] have ended,[26] or have been rescinded,[27] and it is clear from the comment that funding for large portions of the project would not be available until

---

[22] KTOO News "Mendenhall Glacier Visitor Center plans for limited staffing for first cruise ship on Monday." https://www.ktoo.org/2025/04/10/mendenhall-glacier-visitor-center-plans-for-limited-staffing-for-first-cruise-ship-on-monday/

[23] Secretary of Agriculture, Secretary Memorandum: SM 1078-015. https://www.usda.gov/sites/default/files/documents/sm-1078-015.pdf

[24] "A review of the President's Fiscal Year 2026 Budget Request for the United States Forest Service." https://hillheat.com/events/2025/06/11/a-review-of-the-president-s-fiscal-year-2026-budget-request-for-the-united-states-forest-service

[25] Multiple comment responses, see FS_017199, comment 8-2 as an example: "Funding for the proposed project would come from a variety of sources. Project components would be funded as appropriate opportunities emerge through federal funding opportunities such as the Great American Outdoors Act and the Infrastructure Investment and Jobs Act. Where appropriate, funding may also secured through public/private partnerships."

[26] Funding for the Great American Outdoors Act ended in FY25

[27] Funding Executive Order 14052 of November 15, 2021 (Implementation of the Infrastructure Investment and Jobs Act) was rescinded by the Trump Administration

Case 1:24-cv-00013-SLG 11

well into the future. Since construction has not begun, vacatur would not have disruptive consequences in this area. In evaluating the disruptive effects of vacatur, federal courts have been reluctant to give economic considerations the same weight as environmental ones. *See Public Emples. for Envtl. Responsibility v. United States Fish & Wildlife Serv.*, 189 F. Supp. 3d 1, 3 ("Absent a strong showing that ... vacatur will unduly harm economic interests...the Court is reluctant to rely on economic disruption as the basis for denying the plaintiffs the injunctive relief they seek."); *Southeast Alaska Conservation Council v. United States Forest Serv.*, 468 F. Supp. 3d 1148, 1155 ("Nevertheless, the Court finds that the economic harm caused by partial vacatur of the Project EIS does not outweigh the seriousness of the errors in that document, such that remand without vacatur is appropriate). Therefore, even if Defendant's were to claim potential loss of funding or disruption of a funding source, the seriousness of the legal violation and reduction in environmental harm that would result from not implementing the EIS and ROD weigh strongly in favor of the default remedy of vacatur.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court set aside the Record of Decision (ROD) adopting the selected alternative from the FEIS, and vacate the EIS.

11 December 2025                                                           Respectfully submitted

                                                                           [signature]

                                                                           Katharine B. Miller (*Pro se*)

12

well into the future. Since construction has not begun, vacatur would not have disruptive consequences in this area. In evaluating the disruptive effects of vacatur, Federal courts have been reluctant to give economic considerations the same weight as environmental ones. *See Pacific Empire. for Envtl. Responsibility v. United States Fish & Wildlife Serv.*, 189 F. Supp. 3d 1, 3 ("Absent a strong showing that ... vacatur will unduly harm economic interests ... the Court is reluctant to rely on economic disruption as the basis for denying the plaintiff the injunctive relief they seek."); *Southeast Alaska Conservation Council v. United States Forest Serv.*, 468 F. Supp. 3d 1148, 1155 ("Nevertheless, the Court finds that the economic harm caused by partial vacatur of the Project EIS does not outweigh the seriousness of the errors in that document, such that remand without vacatur is appropriate." Therefore, even if Defendant's were to claim potential loss of funding or disruption of a funding source, the seriousness of the legal violations and reduction in environmental harm that would result from not implementing the EIS and ROD weigh strongly in favor of the default remedy of vacatur.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court set aside the Record of Decision (ROD) adopting the selected alternative from the FEIS, and vacate the EIS.

11 December 2025

Respectfully submitted

Korianne B. Miller (Pro se)

12